Yes, good morning, Your Honor. Good morning. Good morning, Mr. Fielding. Sir, one minute before rebuttal. Yes, I did. May it please the Court, my name is Daryl Field and I represent an appellant, Ethan Melzer. The defendant's sentence should be vacated because a reasonable observer of the sentencing might infer that the district court favored Judeo-Christian values and the defendant's opposition to those Judeo-Christian beliefs played an aggravating role in the court's determination of the sentence. In this case, the district court didn't just vote that O-9-A and defendant are opposed to Judeo-Christian beliefs. The court added that Judeo-Christian values are, quote, are good for civilization. Mr. Fields. Yes, Your Honor. Wasn't that in the PSR, in paragraph, that was something the district court came up with on its own, right? That was in paragraph 17 of the sentencing report, right? Yes. What's in paragraph 17 is that one So that didn't reflect the judge's views about Judeo-Christian values being good for civilization. It reflected what the PSR had indicated, which was that your client and his organization opposed those values because they were good for consideration, good for civilization, and he wanted chaos. It's describing the views as reflected in the PSR of your client and the organization. This wasn't something the district court came up with on its own. All the presented report doesn't say anything about Judeo-Christian values being good for civilization or about anybody believing that. All the pre-sentence report says in that very long paragraph 17 on page 8 of the pre-sentence report is that one of the three criticisms O-9-A has of Western civilization is that it, quote, is imposing its imposing social norms derived from Judeo-Christian beliefs. Right. So it's saying the organization is opposed to Judeo-Christian beliefs. That's right. But it makes no value judgment. And that's a factual finding of that view espoused by your client. Yes. About the doctrine of O-9-A, which my client is a follower, was a follower. The judge's statement at sentencing when he says also he could achieve his nihilist goal of undermining Judeo-Christian values and rupturing civilized society. And then he says a paragraph later, in its view, meaning this group that your client belongs to, as embraced by Mr. Meltzer, these values hold us back from the state of nature. Isn't this simply a restatement of paragraph 17 and your client's views? No, it is not. Well, let me back up for a second. Do you think it is a problem at sentencing for a judge to recite whatever the views of the defendant are, assuming those views are not disputed, let's say? No matter how repugnant those views are, is a judge allowed to talk about them? A judge is allowed to talk about a person's beliefs if they are relative to motive or they go to future dangerousness. And if these, if we were to conclude that these go, that these comments of the district court do reflect not the judge's views, but the client's views, and that they go towards what the client's motives were, that it would not have been inappropriate for him to say, to make reference to them? It's not inappropriate for the court to say that 09A opposes Judeo-Christian values. It's the editorialism. I compare it to Malik Jones, Malik Jones. So what was the editorializing? Where did he editorialize it? The editorializing is adding that. Give me the page number, because I'm looking at page 45. Page 45, yes. Page 45, the court says, Meltzer, Meltzer, let's see, the organization of Meltzer opposed those Judeo-Christian values because they're good for civilization. Okay, so how is that a mischaracterization of paragraph 17? Because all paragraph 17 says is that 09A is critical of Western civilization because it, quote, it restrains violence, it's embracing the multiculturalism, and it's imposing social norms derived from Judeo-Christian values. And in the very next section, the sentence says, at the core of its ideology is a militant support for the promotion of extreme violence in order to overthrow Western civilization in the hopes of giving way to this purported natural order of chaos. Yes. I agree that's in there. Yes. You would agree that's a factual finding. Yes, that's what it is. And you would agree there was no objection to that factual finding. Yes. So I guess that's what I'm trying to see. I don't understand how what the judge said in page 45 is anything other than a paraphrase. It's, it's, it's, it's adding a value judgment. It's adding a value judgment. Just like in Malik Jones, he belonged to an organization that in the name of a particular religion, in the name of Islam, it killed Christians. Now, it's very fine for the district court to note that fact. And it does go to Malik Jones' future dangers in a sense. If that's what he believes, he's liable to act on it. But the court couldn't say that Christianity is good for civilization, and that's why. Even if we agree with you that there could be your interpretation that some of the judge was that was a possible interpretation, why should we assume that that's what he meant when later in the sentencing, the government specifically said, to be absolutely clear, the defendant is not being sentenced for his beliefs, his worldview, or even his advocacy for it. And the district court agrees. That says, as counsel of the United States described, he's not being charged here with his ideology. It's his crime. When he was transferred to Italy, we know that that ideology wasn't before Italy. Why should there be any reasonable observer looking at this sentencing who couldn't possibly believe the district court considered that when the district court said, I'm not considering that. You want to send it back to the district court to have the district court repeat what it already said, which is, I'm not considering his ideology. I'm sorry. What the district court said is that he is not charged here with his ideology. It's the government. Early on, page 30, they talked about sentencing. But the court just says he's not charged with his ideology, which he's not. And two paragraphs earlier, the court says what's important is that he acted to advance his extreme – his extreme views. And what were his extreme views? They included that he opposed the Judeo-Christian values. The court said somewhat he's not charged, which is true. But this – but it doesn't say sentencing. And this is – the court did reference the AUSA saying, to be absolutely clear, the defendant's not being sentenced for his beliefs, his worldview, or even his advocacy. And the court references, as the counsel for the United States described, he's not charged with his ideology and says he's crying the hand after his views were transferred to Italy. What the court is indicating there is he held these ideologies for years prior to being transferred to Italy. It was only when he acted upon them that he committed a crime, and that's what he was being sentenced for. You're really just trying to parse words. But the court says he's charged. The court doesn't say sentence. And the court is dealing with the first of the 3553A factors, the nature, circumstance of the crime. And it says this is important. What's important is he acted to advance an extremist ideology. Right. He acted, he says. Yes. That is important. You would disagree that it's – Yes. It is important. But the court says – His actions. Yes. Yes, it is. And that's what the court said his problem was. It is. That he acted. He could have these views all day, but you can't try to kill your platoon members over them. That is correct. But – So what in particular do you think would leave a reasonable observer, having observed the full sentencing, with any impression that the judge was acting on his own personal religious beliefs and against Mr. Melcher for an unconstitutional reason? Yes, Your Honor. First of all, these Judeo-Christian values are not brought up anywhere in the sentencing except by the judge on page 45. And in the PSR, page 17, in a paragraph that the defense stipulated was factually correct. Exactly right. So it was brought up – There's no chance that, yes. But it's a very small part of – By both parties. But – That's actually one of the – Paragraphs in a PSR I've ever seen. It takes, you know, the whole page. It is. And that's why – and it's just a small part of that long paragraph that refers to Judeo-Christian beliefs. And in the rest of the 40 pages that specifically talk about all of Mr. Melcher's actions throughout, like, 10 years of his life, there's no mention of Judeo-Christian values. It just appears there. And there's no editorializing about, well, they're good civilization. So reasonable observer – And it says, yes, that he disagreed with social norms derived from Judeo-Christian beliefs. And at the core of the ideology that he subscribed to is – this was for the purpose of the promotion of extreme violence in order to overthrow Western civilization. So this was all within three lines of each other describing the goals of 09A. So why – I mean, that's merely what the judge was doing here, was describing what was described here as the dominant ideology that he subscribed to. No, the judge is making a value judgment. He's just not noting that his group opposes Judeo-Christian values. His group is – 09A is a white supremacist, Nazi, satanic cult, and it's pro-Jihadist. It's got this wide range of views. And the religion of Mr. Melcher's platoon mates never comes up. He – Right. And the judge – It never comes up. Because – But the judge doesn't mention the religion of the platoon mates either, right? Right, right. It doesn't come up because that's not tied to this particular crime. No, that's not a problem because it never came up. The judge never mentioned it. I don't know what the religion of the platoon – That's right. That's right. The question is what was going on in the mind of the defendant. Yes. And he says this is what was going on in the mind of the defendant as the defendant admits. So I guess that's what I'm trying to figure out. He's purely talking about the views embraced by Mr. Melcher. What was motivating Mr. Melcher? If Mr. Melcher decides that he's going to be motivated by things that involve antipathy to a particular religion or race or gender or whatever, that's on Mr. Melcher. It's not on the judge for having mentioned it. He – I mean, the judge is stuck with the facts of the case. You're saying that he should have zipped his lip and not mention things that factored into Mr. Melcher's mens rea because someone might have interpreted them as meaning that the judge had a particular view of them or that he privately espoused some of the views that Mr. Melcher was opposed to? All I'm saying, Your Honor, is as you know, paragraph 17 is very long. This is a small part of it. It's not at all – his opposition to Judeo-Christian values is not tied to this crime at all. So the judge is pulling that out, and the judge is adding something that's not in there, which is a value judgment. Like in that Malik Jones, it's one thing to note that he kills – But it was also a passing reference. You're saying it was only a passing reference in the PSR, but it was also a passing reference by the judge. And the judge gave a long explanation for the sentence, and it was a passing reference that you're challenging, right? No, sir. It's not a passing reference. Your argument – The good for civilization, the good for civilization was not a passing reference? No, it's not a passing reference. As I say, 48 paid PSR. That is not there. And it's – Before that, he said your client betrayed the United States of America, the military, targeted murder for his fellow soldiers. He worked to aid jihadist terrorists. The judge went on and on about the conduct, and that was the second-to-last sentence after the judge described all the conduct of why your client should be sentenced to where he was sentenced to. But I think we're going in circles at this point. Let's – Yeah, but the judge is making a far – We're good. We're good. Okay. Yeah, we're about all. Yes, Your Honor. Okay. We'll hear from the government. Mr. Hellman. Thank you, and I think it's now good afternoon. May it please the Court, I'm Matthew Hellman, an assistant United States attorney for the Southern District of New York. I represent the United States in this appeal, as I did in the proceedings in the district court. Respectfully, the appeal should be dismissed and judgment of conviction affirmed. Time and again, Kane in 2006, Fell in 2008, Jones in 2024. Very recently, this Court has ruled that while a defendant's abstract beliefs cannot be invoked at a sentencing, to the extent that beliefs or associational activity is meaningfully connected with the another 3553A factor, a sentencing court may consider them. That is precisely what Judge Woods did in this case. Explaining the reason why Mr. Melser committed his offenses against his fellow service members, and indeed the country, was relevant not only with respect to the motivation for the offense conduct, but also to a number of other arguments advanced by the defense. So even if we agree with you ultimately that there's just no question that the district court was largely describing the values that he understood 09A to hold, and that were set forth in the PSR, we still need to be vigilant about enforcing appeal waivers where there are mentions of religion or nationality or unconstitutional factors in a sentencing, in the course of a sentencing. And I think some of our cases have been somewhat inconsistent about whether you have to establish merit to the claim in order to get past the motion to dismiss, or whether you just have to raise a colorable claim to get a consideration on the merits. What would you say the correct standard is? That plain error review ultimately would guide, but here where Judge Woods so clearly tied... How would plain error, if it's an impermissible, constitutionally impermissible factor... First of all, as Judge Carney pointed out, we've said that's an exception to the waiver, and government agrees with that, right? Yes. So if the only challenge on appeal is the district court impermissibly considered my religious beliefs, my race, the waiver should not apply. We should hear that on the merits, and I don't know why that would be on plain error, except that the court did that, right? But that was the whole... Excuse me. That was the holding in Fell, Your Honor, that plain error review would attach where... It was the idea, and if the judge actually made the mistake, then you've got plain error. It doesn't change what the standard is. It just means that if this error exists, then yeah, plain error is going to be satisfied, right? And the answer would be yes, plain error is the standard, because it was never objected to. If, in fact, we conclude that a judge did take into account a constitutionally impermissible factor, then you've got plain error. It doesn't change the standard that applies. It just means that if this thing actually happened, and it's obvious, we can see it on the face of the record, then yeah, this is one of those really bad errors that, if it happened, will wind up satisfying plain error. So the plain error really has to do more with whether an objection was made at the time, and then what kind of consideration we give to whether just a colorable claim or something more substantial had to have been made. And here, we've said in some of our cases that we understand why it's sentencing. Some might not object to the district judge's statements showing unconstitutional motivation in imposing a sentence just because of the dynamics of the situation. But I was interested in your view about, to get past the motion to dismiss, what level of showing should an appellant be held to in order to get a full consideration on the merits, assuming that we've dealt with the failure to object first? And fair enough. And I think the defining line must be more than the line of cases advanced by counsel, such as Cava and Long, where the invocation of a defendant's national origin or race or ethnicity is so clearly an impermissible factor that it immediately surmounts that hurdle. In each of those cases, though, we said we're sure that the able district judge did not take those into account and just really misspoke. And it was unfortunate because a reasonable observer could come away with the impression that an unconstitutional factor was considered. But so we've sent it back for a redo, still while rejecting the notion that the sentence was, in fact, imposed for those reasons. Absolutely. But in contradistinction... There was a colorable claim. There was a colorable claim of some kind. Well, it was an error, right? It wasn't that it was a colorable claim. We found that it was a valid claim, right? We didn't say it's colorable, like it might be wrong. We didn't send it back because maybe there was a mistake, right? We said there was a mistake. We're not saying that the judge operated with an evil heart. That would be another...  But we sent it because there was error. I mean, a judge can say things inadvertently that create an appearance of impropriety that then violates somebody's rights, right? But that's finding that there actually is error. Well, let me just see if I can clarify what I think the government's position should be in this situation, which is if the only issue on appeal, there was a waiver, but the only issue on appeal is whether or not a judge impermissibly considered, unconstitutionally considered a basis of his race or religion, the government shouldn't try to enforce the waiver in that case. If there were other claims that he was making about the sentence that would have been... If that wasn't true, would be gone, then the government would say, that didn't happen, and he's waived these other claims. Here, the only claim is that. And my view in that situation, the government should move to dismiss. There should be full consideration of that on the merits because that's the only issue that's raised. And the standard is, whether it was an objection or not, was there a reasonable observer looking at the transcript would believe that's what happened. Shouldn't that be how we should deal with that type of situation? That's fair enough. And of course, the government focused its brief and its remarks here. I was surprised that they moved to dismiss when the only issue here was this. I think the government's position then and now has been that it was so clear from the record that Judge Woods in no way relied on this impermissible factor, but was merely describing the offense conduct as he's required to do, that there was really no further inquiry required. So your view is that it was so obviously an invalid claim that you didn't feel like you had to... It was appropriate for the government to exercise its discretion to not seek to enforce the waiver when it was so obviously an invalid claim here. Correct. And respectfully... There's nothing left to enforce because the only claim, if we agree with you, that no reasonable observer could possibly believe that, that, you know, the address of the waiver, there's nothing left to enforce. I mean, it winds up being six one way after the other, right? We either dismiss, we enforce the waiver, right, and dismiss the appeal because there's no claim here, or we enforce the waiver in every respect to accept this claim, and then we affirm on the merits. Is there any functional difference for the government here, assuming that we always have to work through the claim to figure out if there's an exception to the waiver? I know it sort of winds up being this sort of circular argument that if there's a meritless claim, then the waiver is enforceable, right? I think that's what the government's saying. If there's a meritless claim, then the waiver is enforceable. But if we have to get to the merits anyway, then why is one procedural route more appropriate than the other? Could I suggest that possibly if the claim were in effect to assistance of counsel, then the record might not be adequately developed, and it might require a remand to develop, whereas this kind of claim here, we look at the record of the sentencing and can assess it on the merits without further development. So different kinds of ways to deal with a possible dismissal under an appellate waiver. Well, ineffective assistance is now carved out of your appellate waiver, right? So that's kind of a moot point, right? I'm not sure if it was at the time that the plea was entered in this case, but I think your Honor is correct. All right. Thank you, Mr. Gideon. Yes, Your Honor. Our position is that the record does present the appearance that in which a reasonable observer might infer that the court sentenced Mr. Melser because he opposed Judeo-Christian values that the court believed were good for civilization. And the test is we don't have to show that the court actually, that that actually happened, only the appearance, only that a reasonable observer might come to that conclusion, and we believe that this record makes that up. Thank you, Your Honor. Thank you both. We'll reserve the decision and have a good day. Yes.